**JUDGE DANIELS**

Robert A. McTamaney (RM 9629)
Gerald W. Griffin (GG 2778)
2 Wall Street
New York, New York 10005
(212) 732-3200
ATTORNEYS FOR PLAINTIFF
CUTTING EDGE ENTERPRISES, INC.

**06  CV  667**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

CUTTING EDGE ENTERPRISES, INC.                    :

              Plaintiff,                    :

              v.                    :        Civil Action No.:

THE NATIONAL ASSOCIATION OF                       :
ATTORNEYS GENERAL;                                :
LAWRENCE WASDEN,                                  :
    in his official capacities as Attorney General   :
    of the State of Idaho and Co-Chair of the        :
    Tobacco Committee of the National Association    :
    of Attorneys General;                            :
TOM MILLER,                                       :
    in his official capacities as Attorney General   :
    of the State of Iowa and Co-Chair of the         :
    Tobacco Committee of the National                :
    Association of Attorneys General;                :        COMPLAINT
TROY KING,                                        :
    in his official capacity as Attorney General     :
    of the State of Alabama;                         :
DAVID W. MARQUEZ,                                 :
    in his official capacity as Attorney General     :
    of the State of Alaska;                          :
MIKE BEEBE,                                       :
    in his official capacity as Attorney General     :
    of Arkansas;                                     :
BILL LOCKYER,                                     :
    in his official capacity as Attorney General     :

of the State of California;                                :
JOHN SUTHERS,                                             :
    in his official capacity as Attorney General      :
    of the State of Colorado;                         :
RICHARD BLUMENTHAL,                                       :
    in his official capacity as Attorney General      :
    of the State of Connecticut;                      :
CARL C. DANBERG,                                          :
    in his official capacity as Attorney General      :
    of the State of Delaware;                         :
ROBERT SPAGNOLETTI,                                       :
    in his official capacity as Corporation Counsel   :
    of the District of Columbia;                      :
THURBERT E. BAKER,                                        :
    in his official capacity as Attorney General      :
    of the State of Georgia;                          :
MARK J. BENNETT,                                          :
    in his official capacity as Attorney General      :
    of the State of Hawaii;                           :
LISA MADIGAN,                                             :
    in her official capacity as Attorney General      :
    of the State of Illinois;                         :
STEVE CARTER,                                             :
    in his official capacity as Attorney General      :
    of the State of Indiana;                          :
PHILL KLINE,                                              :
    in his official capacity as Attorney General      :
    of the State of Kansas;                           :
CHARLES FOTI,                                             :
    in his official capacity as Attorney General      :
    of the State of Louisiana;                        :
G. STEVEN ROWE,                                           :
    in his official capacity as Attorney General      :
    of the State of Maine;                            :
J. JOSEPH CURRAN, JR.,                                    :
    in his official capacity as Attorney General      :
    of the State of Maryland;                         :
TOM REILLY,                                               :
    in his official capacity as Attorney General      :
    of the State of Massachusetts;                    :
MIKE COX,
    in his official capacity as Attorney General      :
    Of the State of Michigan;                         :
JEREMIAH W. (JAY) NIXON,                                  :
    in his official capacity as Attorney General      :
    of the State of Missouri;                         :

MIKE MCGRATH,                                               :
    in his official capacity as Attorney General     :
    of the State of Montana;                         :
JON BRUNING,                                               :
    in his official capacity as Attorney General     :
    of the State of Nebraska;                        :
PETER C. HARVEY,                                           :
    in his official capacity as Attorney General     :
    of the State of New Jersey;                      :
PATRICIA A. MADRID,                                        :
    in his official capacity as Attorney General     :
    of the State of New Mexico;                      :
ROY COOPER                                                 :
    in his official capacity as Attorney General     :
    of the State of North Carolina;                  :
WAYNE STENEHJEM                                            :
    in his official capacity as Attorney General     :
    of the State of North Dakota;                    :
JIM PETRO,                                                 :
    in his official capacity as Attorney General     :
    of the State of Ohio;                            :
W. A. DREW EDMONDSON,                                      :
    in his official capacity as Attorney General     :
    of the State of Oklahoma;                        :
HARDY MYERS,                                               :
    in his official capacity as Attorney General     :
    of the State of Oregon;                          :
TOM CORBETT,                                               :
    in his official capacity as Attorney General     :
    of the State of Pennsylvania;                    :
HENRY MCMASTER,                                            :
    in his official capacity as Attorney General     :
    of the State of South Carolina;                  :
LARRY LONG,                                                :
    in his official capacity as Attorney General     :
    of the State of South Dakota;                    :
MARK SHURTLEFF,                                            :
    in his official capacity as Attorney General     :
    of the State of Utah;                            :
WILLIAM H. SORRELL,                                        :
    in his official capacity as Attorney General     :
    of the State of Vermont;                         :
JUDITH W. JAGDMANN,                                        :
    in her official capacity as Attorney General     :
    of the State of Virginia;                        :
ROB MCKENNA,                                               :

in his official capacity as Attorney General   :
  of the State of Washington;       :
PEG LAUTENSCHLAGER,       :
  in her official capacity as Attorney General :
  of the State of Wisconsin;      :
PAT CRANK,          :
  in his official capacity as Attorney General :
  of the State of Wyoming;      :
                   :
Defendants.           :
----------------------------------------------------------------x

## COMPLAINT

Plaintiff, Cutting Edge Enterprises, Inc. ("Cutting Edge" or "Plaintiff"), by counsel, for its Complaint for declaratory, injunctive and other relief, states as follows:

1. This action seeks a declaration of rights among the parties to an actual controversy and an injunction against certain acts and practices of Defendant Attorneys General, who in concert with each other and with Defendant The National Association of Attorneys General ("NAAG") have wrongfully excluded Cutting Edge cigarettes from the relevant market by refusing to list Cutting Edge brands and current contact information on NAAG and State web sites.

2. This action seeks declaratory and injunctive relief from violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and the common law, pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; the Declaratory Judgment Act of the United States, 28 U.S.C. §§ 2201-2 (2001) and Section 16 of the Clayton Act, 15 U.S.C. § 26.

## PARTIES

3. Cutting Edge is a Subsequent Participating Manufacturer ("SPM") and party to the Master Settlement Agreement dated as of November 23, 1998 ("MSA"), a full copy of which is available, with amendments, at: http://www.naag.org/backpages/naag/tobacco/msa. Cutting

Edge is incorporated in the State of Maryland and maintains its principal place of business at 140 Theodore Drive, Mocksville, North Carolina 27028.  Cutting Edge has been an MSA Participating Manufacturer since December 22, 2000, as shown in the NAAG list at: http://www.naag.org/backpages/naag/tobacco/msa.  (Terms defined in the MSA are capitalized in this Complaint and the MSA definitions are incorporated by reference.)

4.    NAAG is an unincorporated association with its headquarters in the District of Columbia, which has done and regularly does business in this District, the membership of which is comprised of the Attorneys General of the several States.  NAAG has employed staff known as the Tobacco Project that maintains a web site containing information about the MSA, including a list purporting to show current MSA Participating Manufacturers and contact information.   NAAG has refused to update its web site with current brand or contact information for Cutting Edge.

5.    Individual Defendants are the Attorneys General for and are representatives of MSA Settling States, including the Corporation Counsel of the District of Columbia, that have done and regularly do business in this District, and have refused to update their tobacco manufacturer certification web sites to reflect the current cigarette brands produced by Cutting Edge and its current contact information.  Defendant Lawrence Wasden, Attorney General of the State of Idaho, and Defendant Tom Miller, Attorney General of the State of Iowa, serve as Co-Chairs of the Tobacco Committee of NAAG, which directs the activities of the NAAG Tobacco Unit, which refuses to update the Participating Manufacturer list maintained on the NAAG web site to reflect the current cigarette brands produced by Cutting Edge and its current contact information.

## JURISDICTION AND VENUE

6.    Cutting Edge is party to the MSA as an SPM.  Defendants negotiated, agreed to and signed the MSA in this District.  MSA payments are held in escrow in this District and the MSA Escrow Court  is a Court of the State of New York.

7.    This Court has jurisdiction of this proceeding under 28 U.S.C. §§ 1331 and 1337 (2001).  Venue lies in this Court pursuant to 28 U.S.C. § 1391 (2001).  Therefore, jurisdiction and venue lie properly in this Court.

## RELEVANT MARKET

8.    The relevant product market is cigarettes sold in the relevant geographic market.  The relevant geographic market is the United States, including its territories and possessions.

## THE CONTROVERSY

9.    Plaintiff Cutting Edge seeks to continue operations as a fully compliant SPM.  The thirty-nine Defendant Attorneys General are acting in concert among themselves and with their association, NAAG, to exclude Cutting Edge brands from marketing areas throughout the United States.  Defendant Attorneys General have agreed with, caused, or allowed the NAAG Tobacco Unit staff to refuse to update the Cutting Edge listing on the NAAG web site to reflect accurately Cutting Edge cigarette brands and contact information.  Defendant Attorneys General refuse to list Cutting Edge brands on their State certification web sites unless they are listed on the NAAG web site.  Essentially uniform "certification" or "contraband" statutes enacted by Settling States impose criminal penalties on wholesalers for selling brands not listed on Settling States' certification web sites.  These statutes were not included in the MSA, as negotiated.

10.  Defendants' joint and collaborative use of the NAAG and State web sites excludes Cutting Edge brands from sale in such a large group of States that refusal to list Cutting Edge brands on the NAAG and state web sites effectively bans those brands from sale in the United States.  As an SPM, Cutting Edge can operate only as an MSA Participating Manufacturer and the concerted refusal to list its new brands harms competition in the relevant market, and destroys Cutting Edge's business opportunities by denying it the access to the relevant market that is necessary for Cutting Edge to compete.

11.  No provision of the MSA or any statute, regulation or order authorizes, or allows, Defendants' agreement to restrict use of the NAAG web site or the State certification lists.

12.  Plaintiff seeks an injunction prohibiting Defendants from refusing to update their Certification web sites with current Cutting Edge brands and the NAAG web site with current Cutting Edge brands and contact information, upon request.


## MSA BACKGROUND

13.  The MSA was entered into as of November 23, 1998 to resolve antitrust actions brought by forty-six States (and five other jurisdictions) to recover and reimburse Medicaid costs and other damages from the major cigarette manufacturers, which were alleged to have conspired through the Tobacco Institute and otherwise to have suppressed health research data.  The four largest defendant companies (Philip Morris Incorporated, R.J. Reynolds Company, Brown and Williamson Tobacco Corporation and Lorillard Tobacco Company) settled first and were designated the Original Participating Manufacturers ("OPMs").  At the time of execution of the MSA, OPMs controlled approximately 98% of cigarette sales in the United States.  Defendants negotiated over the course of several months, agreed to, and executed the MSA in this District.

14. Provisions of the Qualifying Statutes that had to be passed by every Settling State to receive MSA funds (as set forth in MSA Exhibit T) require that every new entrant planning to sell cigarettes in the United States must either: (1) participate in the MSA, or (2) place funds in escrow as a Non-Participating Manufacturer ("NPM"). Cutting Edge joined the MSA a little over two years after the effective date of the MSA. Cutting Edge proceeded to develop its brands and establish its business. The NAAG web site lists Cutting Edge as "SPM since 12/22/2000."

15. Defendants meet regularly with all Participating Manufacturers, as required by Section VIII(a)(2) of the MSA, to discuss matters of MSA implementation and enforcement, including the use of the web site lists that are the central focus of this case.

FACTS

16. Cutting Edge was incorporated on May 11, 1998, in Maryland. The founder of Cutting Edge, Mr. Lee Wais, developed the company, created and registered its initial trademarks, secured the necessary licenses and joined the MSA as an SPM.

17. While working to begin making and marketing his initial brands, Mr. Wais found a purchaser for his company. Elderly and in failing health, he sold his stock in the company to Windy City Tobacco, LLC ("Windy City") on March 16, 2005, before Cutting Edge had sold any cigarettes. Mr. Wais subsequently has died.

18. On March 22, 2005, counsel for Cutting Edge formally requested that he be listed as the MSA notice party for Cutting Edge and that two new brands be added to the NAAG web site. Neither action was taken. During the next several months counsel engaged in correspondence and telephone conversations with counsel for NAAG and the State of Illinois, providing

- 8 -

information about the purchase of Cutting Edge and otherwise seeking to cooperate with Defendants, but to no avail.

19.  At the same time Cutting Edge proceeded to secure rotation plan approval by the Federal Trade Commission; to list ingredients with the Department of Health and Human Services for its new Dallas™ brand; and to make arrangements for exclusive initial fabrication by Alternative Brands, Inc. of Mocksville, North Carolina, a federally licensed tobacco manufacturer.  Simultaneously, it began exploring opportunities to lease or purchase machinery to fabricate cigarettes and secure a building to serve as its factory.

20.  Cutting Edge worked to bring its brands to market, beginning with Dallas™, but was rebuffed for over nine months in its efforts to secure listing on the NAAG web site and certification by the thirty-nine Defendant Settling States.  Certified and listed for sale in only a small number of states and unable to make sufficient sales to continue to operate, the owner of Cutting Edge's parent, Windy City, transferred his equity in Windy City to the current owner, Mr. Calvin Phelps of Mocksville, North Carolina, as of January 15, 2006 in lieu of a potential foreclosure.

21.  On January 15, 2006, the Tucson® brand was assigned to Cutting Edge under an exclusive license agreement.  Cutting Edge is responsible for MSA payments for sales of Tucson® after this brand is listed.  NAAG and individual Defendants have failed to list the Tucson® brand or to update their web sites for any brand.

22.  Repeated efforts to secure listing of Cutting Edge brands on the NAAG web site have failed.  Individual Defendants treat such listing as an absolute prerequisite to listing on their certification list web sites and to selling the brands in their jurisdictions.  Contact information for Cutting Edge on the NAAG web site remains inaccurate and misleading, omitting the new

brands and showing the deceased founder as the contact party at an unused former address. Under these circumstances, distributors will not purchase Cutting Edge products.

### COUNT I -- VIOLATIONS OF THE SHERMAN ACT

23. Cutting Edge alleges and incorporates by reference each and every allegation made in Paragraphs 1 through 22 above, as if set out in full herein.

24. As a direct and proximate result of Defendants' unlawful conspiracy in restraint of trade, Cutting Edge is unable to sell its new brands in any of the thirty-nine Settling States in which individual Defendants serve as Attorneys General. It is unable to sell its new brands in sufficient volumes in the non-contiguous States that have listed its brands or that do not require NAAG listing to operate as a viable competitor in the relevant market. Distributors throughout the relevant market refuse to trade in MSA brands not listed on the NAAG web site.

25. Defendants arbitrarily and capriciously have refused to list new brands and contact information for Cutting Edge. Potential customers are well aware of the criminal penalties for sale of contraband (and likely seizure thereof), and refuse to deal with Cutting Edge until the listings and web sites are updated.

26. Failure to list Cutting Edge's new brands effectively bans them from sale in the United States. No provision of the MSA or any law, regulation or order authorizes the procedure of arbitrary, restrictive, and selective listing of brands and contact information by the joint and collaborative actions of Defendants so as to exclude Plaintiff.

27. The concerted practice by the thirty-nine Settling States of certifying only brands posted on the NAAG web site and NAAG's arbitrary and capricious refusal to list the Cutting Edge brands and contact information effectively enforce a classic horizontal group boycott that

restrains trade and harms competition as a whole by foreclosing access to the relevant market by potential competitors, and has destroyed and continues to destroy Cutting Edge's business opportunities by denying it the access to the relevant market that is necessary for Cutting Edge to compete, all in violation of the Sherman Act.

28. As implemented by the horizontal agreement and conspiracy in restraint of trade among Defendants and other parties to the MSA, the extra-contractual and unauthorized manipulation of MSA listings by Defendants erects an insurmountable and impenetrable regulatory barrier to entry by Cutting Edge into the relevant market.

29. Defendants have engaged in concerted, joint, and deliberate actions and have agreed among themselves and with other parties to the MSA to restrict all access by Cutting Edge to the relevant market for the sale of cigarettes in the United States. In so doing, Defendants have behaved and are continuing to behave as commercial or proprietary participants exercising a dominant position in the relevant market.

30. Defendants' concerted actions have interfered with the natural flow of competition in interstate commerce by targeting new entrants, including Cutting Edge, for exclusion from the relevant market and, ultimately, destruction.

31. On its face, Defendants' collaborative activity has, and is likely to continue to have, the anticompetitive purpose and effect of unreasonably restricting competition and decreasing output in the relevant market, which is exactly the kind of harm the antitrust laws aim to prevent.

32. Defendants have collectively and consciously committed to a common scheme designed to achieve the unlawful objective of effecting and sustaining a horizontal group boycott in naked restraint of trade, thereby harming competition, curtailing supply, restricting output, and raising

prices in the relevant market in a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1.

33.  As a direct and proximate result of Defendants' joint, exclusionary, and coercive conduct, Cutting Edge has been foreclosed from access to the relevant market necessary to enable it to compete, and has suffered lost profits and has been injured in its business and property and will continue to be harmed and damaged in its business and property by Defendants' actions until enjoined.  Plaintiff is entitled to injunctive relief to insure that it can compete freely in the relevant market.

## COUNT II – TORTIOUS INTERFERENCE

34.  Cutting Edge alleges and incorporates by reference each and every allegation made in Paragraphs 1 through 33 above, as if set out in full herein.

35.  Cutting Edge has and anticipates that it will have multiple business relationships, contacts, and opportunities with third parties arising from the lawful purchasing and distributing of Cutting Edge products in the relevant market.

36.  Defendants intentionally, improperly, and without justification interfered, disrupted, and destroyed existing and prospective relationships, contracts, and business opportunities with third parties known by Defendants to belong to Cutting Edge by refusing to allow Cutting Edge brands and contact information to be listed, thereby preventing the sale of Cutting Edge products in the relevant market without justification or authorization in any statute or regulation or provision of the MSA.  These actions prevent wholesalers and retailers from lawfully purchasing and distributing Cutting Edge products in the relevant market.

Case 1:06-cv-00667-GBD   Document 1   Filed 01/27/06   Page 13 of 17

37.  Through their unlawful conspiracy or agreement in restraint of trade and other conduct described herein, Defendants acted with malicious, dishonest, unfair, or improper means with the purpose of harming Cutting Edge.

38.  As a direct and proximate result of the foregoing, Cutting Edge has been injured and damaged in its business relationships, contracts, and opportunities with third parties in the relevant market; is threatened with immediate and irreparable additional loss and damage in its business relationships, contracts, and opportunities with third parties in the relevant market; and will continue to be so threatened unless Defendants are enjoined from continuing the collaborative, exclusionary, anticompetitive and tortious practices against Cutting Edge and are required  to list Cutting Edge brands and contact information, upon request, on the NAAG web site.

39.  Cutting Edge is entitled to injunctive relief from Defendants' continuing tortious interference with its business relationships, contracts, and opportunities with third parties in the relevant market.

COUNT III – BREACH OF CONTRACT

40.  Cutting Edge alleges and incorporates by reference each and every allegation made in Paragraphs 1 through 39 above, as if set out in full herein.

41.  The MSA is a contract negotiated, agreed to, and executed by Defendants in this District.

42.  An SPM since December 22, 2000, Cutting Edge is a party to the MSA entitled to enforce the agreed-upon rights set forth therein.

- 13 -

43.  Defendants have conspired to cause or allow NAAG to maintain an arbitrary, exclusionary and restrictive listing of Participating Manufacturers so as to prevent introduction of new cigarette brands and growth of small Participating Manufacturers, in material breach of the MSA's terms providing for collection of payments from all Participating Manufacturers on the basis of market share.

44.  As a direct and proximate result of the foregoing breach, Cutting Edge has been injured in its business and property, is suffering immediate and irreparable additional loss and damage, and will continue to suffer harm until Defendants are enjoined from excluding Cutting Edge brands and showing erroneous listings for Cutting Edge on the NAAG and State web site lists. Plaintiff is entitled to injunctive relief to insure that it can operate and compete freely in the relevant market as an SPM.

## COUNT IV – DENIAL OF DUE PROCESS

45.  Cutting Edge alleges and incorporates by reference each and every allegation made in Paragraphs 1 through 44 above, as if set out in full herein.

46.  Without statutory or regulatory authority, Defendants have denied Cutting Edge its contractual and property rights under the MSA and constitutional rights to enter the relevant market as an SPM or otherwise.  Neither Cutting Edge nor any other person had any opportunity to be heard or to petition any legislature or administrative agency concerning the secret, undisclosed standards for listing its new brands, yet Cutting Edge has been absolutely prohibited from operating its business, thereby taking its contract, property and constitutional rights without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

47.  Plaintiff is entitled to injunctive relief from Defendants' continuing denial of its contractual and property rights under the MSA and constitutional rights without due process of law.

## COUNT V – VIOLATION OF THE COMMERCE CLAUSE

48.  Cutting Edge alleges and incorporates by reference each and every allegation made in Paragraphs 1 through 47 above, as if set out in full herein.

49.  Defendants have conspired or agreed to and continue to conspire or agree to interfere directly with Plaintiff's ability to conduct its business between and among the several States in violation of the Commerce Clause of the Constitution of the United States.

50.  Plaintiff is entitled to injunctive relief from Defendants' continuing denial of its constitutional rights.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Cutting Edge Enterprises, Inc., prays for:

1. A declaration that:

    A.  Refusal to list accurate brand and contact information for Cutting Edge as a Participating Manufacturer on the NAAG web site:  (1) violates Section One of the Sherman Act; (2) tortiously interferes with Plaintiff's business relationships, contracts and opportunities; (3) breaches the MSA; (4) violates The Fourteenth Amendment to the Constitution of the United States; and (5) violates the Commerce Clause of the Constitution of the United States;

2. An Order that Defendant Attorneys General:

    A.   immediately and accurately list Cutting Edge brands, including Emerald®,

        MAKRO®, Dallas™, Benton™ and Tucson® on each of their respective Settling

        States' certification web sites;

    B.   immediately request NAAG to list accurate, current brand and contact information

        for Cutting Edge, including Emerald®, MAKRO®, Dallas™, Benton™ and

        Tucson®; and

    C.   make future changes to their respective Settling State web sites for Cutting Edge,

        immediately upon request by Cutting Edge.

3. An Order that Defendant NAAG:

    A.   immediately and accurately list Cutting Edge brands, including Emerald®,

        MAKRO®, Dallas™, Benton™ and Tucson® on its web site listing of Participating

        Manufacturers;

    B.   immediately update the contact information for Cutting Edge on its web site listing

        of Participating Manufacturers; and

    C.   make future changes to its web site listing of Participating Manufacturers brand and

        contact information for Cutting Edge, immediately upon request by Cutting Edge.

4. An order that Defendants pay Cutting Edge its reasonable attorney's fees for bringing this

   action; and

5. Such further relief as the Court may deem proper and just.

Dated: New York, New York
January 2 7, 2006

Respectfully submitted,

CARTER LEDYARD & MILBURN LLP

Robert A. McTamaney (RM 9629)
Gerald W. Griffin (GG 2778)
2 Wall Street
New York, New York 10005
(212) 732-3200

ATTORNEYS FOR PLAINTIFF
CUTTING EDGE ENTERPRISES, INC.

OF COUNSEL:

William Jay Hunter, Jr. (WH 7394)
D. Randall Gibson (RG 5338)
David S. Sullivan (DS 8886)
STOLL KEENON OGDEN PLLC
2560 AEGON Center
400 West Market Street
Louisville, Kentucky 40202
(502) 568-9100